Mary F. MURPHY,* Petitioner,

v.

Gregory C. MURPHY,* Respondent.

Family Court of Delaware,
New Castle County.

Submitted: June 1, 1983.
Decided: Aug. 15, 1983.

* A fictitious name utilized to protect the ano- nymity of the parties.

Gerald Z. Berkowitz, Wilmington, for petitioner.

Michael P. Maguire, Wilmington, for respondent.

**GALLAGHER, Judge.**

A petition has been filed by petitioner[1] (father) against respondent (mother) seeking to modify an order entered by this court on June 17, 1982, incorporating into a divorce decree the parties' separation agreement dated October 7, 1981. Under the agreement father is to pay to mother unallocated alimony and child support in the sum of $462 each week. Father now asks that his support obligation be reduced to $250 a week because his income estimations at the time the agreement was entered into were higher than his actual income has turned out to be. Father also suggests that the *Melson* formula, often utilized by this court in determining child support obligations, be utilized by the court if it should produce a lower support figure.

Respondent filed an answer opposing the relief requested by the petition. Although unwilling to relinquish any of her rights

---

1. The original opinion deals with additional issues. Only the issues relating to the incorporation of the separation agreement into the divorce decree will be covered in this abbreviated version of the opinion.

under the agreement, mother does admit that father is presently financially unable to meet his obligations under the agreement and indicates a willingness to be satisfied presently with payment of $350 per week support.

Father, in support of his request that the court modify the separation agreement, argues that when the agreement was incorporated into the divorce decree the court gained full power to modify that agreement under 13 *Del.C.* § 1519.[2]

Mother, in response, insists that the agreement retains its contractual nature despite incorporation into the decree. Therefore, according to mother, the court has no power to modify the terms of the agreement.

Under paragraph 7 of the agreement either party may at any time cause the agreement "to be filed of record in any court of competent jurisdiction". By stipulated order dated June 17, 1983, the agreement was incorporated into the divorce decree entered herein.

Under paragraph 19 of the agreement father is obligated to pay mother $2,000 ($462 weekly) unallocated alimony and child support each month plus an additional $1,000 every December. On emancipation of each child there is to be a $4,000 reduction in "said alimony payment". Curiously, remarriage does not affect father's alimony obligation except at mother's election. If mother should elect to discontinue receipt of alimony payments following her remarriage then the parties are to agree on the amount of child support. If they cannot agree then the Family Court is to determine the amount of child support. Notwithstanding the fact that the agreement provides for unallocated alimony and child support mother may apply for additional child support should she decide that the support specified by the agreement is insufficient. However, upon mother's election to seek additional child support followed by judicial provision therefor father's alimony obligation is to be reduced thereby dollar for dollar. Mother is not free to seek any increase "in alimony or support" for two years from the date of the agreement (October 7, 1983).

How does a pre-nuptial or post-nuptial agreement affect the rights, privileges and obligations of parties to divorce litigation?

■ There is a body of well established law defining the powers of, and limitations on, a court in modifying or enforcing a marital agreement. Where the parties have contracted with respect to their rights, privileges and obligations they are bound by their agreement and the court does not have the power either under 13 *Del.C.* § 1519, or independently, to modify the same. *Harry M.P. v. Nina M.P.,* Del.Supr., 437 A.2d 158 (1981); *C. v. A.,* Del.Supr., 379 A.2d 1119 (1977); *Walter v. Walter,* Del. Supr., 136 A.2d 202 (1957). The existence of an agreement treating matters such as child support, custody and visitation will not preclude the court from entering an independent inconsistent order with respect to these matters, the rationale being that since the children were not parties to the agreement neither they nor the court are bound thereby. But even though a court is free to disregard contractual undertakings respecting children it will normally consider those undertakings and, if reasonable, make them the basis for a court order. *G.W.F. v. G.P.F.,* Del.Supr., 271 A.2d 38 (1970); *Husband B. v. Wife H.,* Del.Super., 451 A.2d 1165 (1982); *Helen S. v. William P.B.,* Del.

---

**2.** § 1519 provides:
(a) A decree or separate order entered under § 1518 of this title may be modified or terminated only as follows:
(1) Support for a child, only as provided in Chapter 5 of this title, or otherwise;

\* \* \* \* \* \*

(4) Alimony or any other relief awarded, only upon a showing of real and substantial change of circumstances.

Super., C.A. No. 82A–FE–8, O'Hara, J. (March 23, 1983).

But is the situation any different where the divorce or other decree touches upon the agreement itself? Does it matter whether the agreement is merely incorporated into the divorce decree or merged therein?

■ If the agreement is merely incorporated into the decree it retains, for all intents and purposes, its contractual character, and the decree is limited by the terms of the contract. *O'Conner v. O'Conner,* Del. Fam., File No. C–7639, Poppiti, J. (Aug. 20, 1981); *Kleila v. Kleila,* 50 N.Y.2d 277, 428 N.Y.S.2d 896, 406 N.E.2d 753 (1980); *Williford v. Williford,* 10 N.C.App. 451, 179 S.E.2d 114, *cert. den.,* 278 N.C. 301, 180 S.E.2d 177 (1971). The purpose of incorporation by reference is to identify and verify the agreement of the parties, provide a basis for *res judicata* and, perhaps, promote enforcement in a foreign forum. *Flynn v. Flynn,* 42 Cal.2d 55, 265 P.2d 865, 866 (1965); *Ruhsam v. Ruhsam,* 110 Ariz. 426, 520 P.2d 298 (1974) (en banc); 24 Am. Jur.2d, *Divorce and Separation* §§ 907, 908 (1966). But since the court looks exclusively to the agreement for resolution of the parties' post-nuptial rights, privileges and obligations it does not have the power, unless contractually given by the parties, to modify the agreement. *C. v. A., supra; Heinsohn v. Chandler,* Del.Ch., 2 A.2d 120 (1938). In short, incorporation of the agreement into the decree does not empower the court to modify the agreement, pursuant to 13 *Del.C.* § 1519, as it might alter a judicial disposition because the terms of the order are entirely the product of its contractual genesis. *See, Harry M.P. v. Nina M.P., supra; Dumel v. Dumel,* Del.Ch., 213 A.2d 859 (1965); *J.W.P., Wife v. R.E.P., Husband,* Del.Ch., 301 A.2d 318 (1973); *Wife, B.T.L. v. Husband, H.A.L.,* Del.Ch., 287 A.2d 413 (1972), *aff'd,* Del.Supr., 336 A.2d 216 (1975). It would also follow that a contempt citation should not issue in the first instance for breach of an agreement incorporated into a decree. *Williford v. Williford, supra.*

■ If the court thereafter enters an order inconsistent with any provision of the agreement as regards children such an order does not modify the agreement of the parties. Lindley, *Separation Agreements and Anti-Nuptial Contracts,* §§ 31–62 (1982). It has been held that in such event suit might then be brought on the contract to recover any monetary differential created by the order. *Knox v. Remick,* 371 Mass. 433, 358 N.E.2d 432 (1976).

■ But if the agreement is merged into the decree the result is entirely different. In that event the rights, privileges and obligations of the parties under the agreement are displaced by the judgment or decree. *Flynn v. Flynn, supra,* and the court has full power to modify the agreement (now an order) to the extent that it has jurisdiction to do so. Following merger the contract between the parties no longer exists and in its stead there is a judgment or decree under which the rights, privileges and obligations of the parties are to be defined and enforced thereafter. 24 Am. Jur.2d, *Divorce and Separation* § 908 (1966). The contempt citation would also be available *ab initio.*

■ Does the fact that the court cannot modify an incorporated separation agreement mean that in every case the court must order the respondent to perform his obligations under the agreement to the letter? The answer is no. The court has the power to award specific performance on such terms and conditions as justice requires even though the performance ordered is not identical with the performance required by the agreement. *Flicker v. Chenitz,* 55 N.J.Super. 273, 150 A.2d 688, 699 (1959), *remanded on other grounds,* 61 N.J.Super. 23, 160 A.2d 132 (1960); *Schiff v. Schiff,* 116 N.J.Super. 546, 283 A.2d 131, 138 (1971), *cert. den.,* 60 N.J. 139, 286 A.2d 512 (1972); *Boyd v. Mercantile Safe Deposit*

*and Trust Co.,* 28 Md.App. 18, 344 A.2d 148, 152 (1975).

 I cannot modify the incorporated agreement now before the court to reduce father's support obligation thereunder. I will give mother a judgment for the full amount of support arrears and for counsel fees. I will, nevertheless, order that father pay not less than $325 each week, a lesser sum than the sum specified by the agreement, and so long as he pays the lesser sum ordered by the court he will not be held in contempt for failure to pay the contractual support. Let me emphasize again that the support arrears will continue to accrue and that with respect to those arrears mother can obtain a judgment and execution thereon in the Superior Court.

IT IS SO ORDERED.